Argued January 9, decided January 23, 1912.

PETERSON v. KENADY.

[120 Pac. 402.]

BROKERS—ACTIONS FOR COMMISSIONS—SUFFICIENCY OF EVIDENCE.

1. Evidence, in a broker's action for commissions for procuring a purchaser for land, *held* insufficient to show that certain written directions, embodying the terms of sale, which were left with a bank, with which the deed and the purchaser's mortgage were deposited, did not relate to the production of purchasers ready and able to purchase.

APPEAL AND ERROR—REVIEW—PRESUMPTIONS—BURDEN OF PROOF.

2. Appellant must affirmatively show error on the part of the trial court in order to have it corrected on appeal.

From Marion: GEORGE H. BURNETT, Judge.

Statement by MR. JUSTICE MOORE.

This is an action by L. E. Peterson and L. M. Bitney, as partners and real estate brokers, against Carrie O. Kenady, to recover a commission. The complaint states, in effect, that on March 12, 1909, plaintiffs were

employed by defendant to sell her farm, particularly describing the land, containing 289.036 acres, at $75 an acre; she agreeing, if they secured a purchaser at that price, to pay them a commission of 3 per cent of the consideration, and stipulating to furnish an abstract showing she had a marketable title of record and that the premises were free from liens and incumbrances; that on May 26, 1909, they procured as purchasers of the land G. A. Cobb and M. S. Cobb, who offered to give the price demanded by paying $7,000 down and securing the remainder by a mortgage on the farm, which proposal was accepted by the defendant, who caused to be furnished to the proposed purchasers an abstract of the conveyances, etc., of her land, which abridgment showed that she did not have a marketable title of record; that the intending buyers required her to furnish further evidence of her title, but she declined to comply therewith and refused to convey the land to them; that they were at all times ready, able, and willing to buy the farm at the price and on the terms mentioned upon receiving a conveyance of a marketable title; that plaintiffs have fully performed their part of the agreement, whereby they are entitled to a commission of $650.33, no part of which has been paid, and for which sum judgment is demanded.

The answer admits that plaintiffs are brokers and that no part of the alleged commission has been paid. For a further defense it is averred that defendant is the owner in fee of the land described which on March 3, 1909, she stipulated to sell at $75 per acre if plaintiffs could secure a purchaser therefor; that on April 9, 1909, and long before they had procured a purchaser of the land, she revoked plaintiffs' license to sell the premises, and so notified them. Other defenses are set forth, but, as demurrers thereto were sustained, no reference will be made to such averments.

The allegations of the remaining new matter in the answer were denied in the reply, and, the cause coming on for trial, a judgment for nonsuit was given, and plaintiffs appeal.                          AFFIRMED.

For appellants there was a brief with oral arguments by *Mr. Frank Holmes* and *Mr. Hiram Overton.*

For respondent there was a brief with oral arguments by *Mr. John A. Carson* and *Mr. Thomas Brown.*

MR. JUSTICE MOORE delivered the opinion of the court.

It is insisted that the testimony shows that the real estate brokers secured purchasers who were ready, able and willing to buy the defendant's farm at the price and on the terms which she offered, and, such being the case, an error was committed in granting the nonsuit. It is maintained by defendant's counsel, however, that the evidence disclosed that, when the negotiations for the sale were consummated, a deed and a mortgage of the premises were left with a bank, pursuant to written instructions to which the proposed purchasers and the defendant assented; that such written directions were not offered in evidence, nor their loss accounted for, so as to permit secondary evidence of their contents to be received; and that the plaintiffs did not offer any testimony tending to show that they produced purchasers who were ready, able, or willing to buy the farm on the terms proposed; and hence no error was committed as alleged.

1. The plaintiff L. E. Peterson testified substantially to the averments set forth in the complaint. His sworn declarations were corroborated in most particulars by the testimony of his partner, L. M. Bitney. E. P. Morcum, an attorney whom the evidence shows represented the defendant during the negotiations, testified that, when the deed and mortgage were signed and acknowledged, they were left with the Farmers' & Mechanics' Bank of

Woodburn, with written instructions relating to their delivery; that he identified a writing which was exhibited to him as a copy of such directions, but he was unable to state what had become of the original instructions.

G. A. Cobb, a witness for plaintiffs, was asked on cross-examination:

"Is it not a matter of fact that on the 26th day of May, 1909, G. A. Cobb and M. S. Cobb and Mr. Morcum signed a written memorandum relating to this matter of purchase of Mrs. Kenady's farm by your brother and yourself?"

He replied: "If you refer to that it is, the instructions about the deed, yes."

Q. "The title?

A. "Yes."

Q. "Where is the document you signed on the 26th of May, 1909, that memorandum about the terms of the sale?"

A. "I don't know; they gave me the copy of it the time we made it. That is all I ever had."

The defendant's counsel thereupon moved to strike out the testimony of all the witnesses because it appeared that the parties had reduced their ultimate agreement to writing, which manuscript afforded the best evidence of the contract. Before this motion was passed upon, plaintiffs' counsel inquired of the witness:

"Did you sign any writing yourself?"

He answered: "No, sir; I will say not that I remember of. I don't have any recollection I signed anything only the mortgage that they drawed up."

M. S. Cobb, having testified in chief for plaintiffs, was interrogated by the court as follows: "Let me direct your attention to this matter, if that paper shows (referring evidently to a copy of the instructions which had been identified by Mr. Morcum) it would obviate all these details. When you consummated this deal with Mrs. Kenady, did you reduce it to writing?"

A. "We did."

Q. "Did you sign it?"

A. "Yes."

Q. "Do you know anything about where that is, where the writing is?"

A. "Well, the mortgage was all that we signed, the mortgage on the property that we was to get back. That was all put in the bank. I don't know only what has been told me."

The witness further stated: "I was going to say right here about the signing that paper: This deal was all closed, and Mr. Morcum spoke up and says: 'Now I will instruct the bank.' If you will notice there that was written on the typewriter by his stenographer, we didn't sign it. It was made in duplicate."

The Court: Did you see that at the time?"

A. "I saw it. He gave it to me. I put it in my pocket. He kept the other."

Q. "You assented to it, did you?"

A. "Sure."

Plaintiffs' Counsel: "Was that your agreement between you and Mrs. Kenady?"

A. "Call it agreement if you want to; this was simply instructions to him what to do with them papers we left in there."

The Court: "Your attention to the transaction is stated in there?"

A. "Yes."

Q. "This is the only copy you had?"

A. "I think it was drawn up in duplicate. I think Jones (referring to defendant's agent who was present when the directions to the bank were prepared) and Mrs. Kenady kept one and we kept one. I know there was two or more. As far as signing it, we never signed it."

Plaintiffs' Counsel: "Do you understand that writing there to be an agreement as to the terms of purchase and sale between you and Mrs. Kenady, or is it an agreement as to the instructions to the Farmers' & Mechanics' Bank of Woodburn?"

A. "Only instructions to the bank about these papers. That is the way I understand it. It didn't cover all the terms of the deal; in fact, it covers no terms of the deal,

just instructions to the bank what to do with these papers.'

The plaintiffs' counsel, having declined to introduce in evidence the original instructions to the bank, or to account for their loss, so as to offer in evidence a copy of the directions, the jury were discharged, and a judgment of nonsuit given.

It is impossible accurately to state from the testimony received that the written directions to the bank, to which the parties assented, did not relate to the producing by plaintiffs of purchasers who were ready, able, and willing to buy the defendant's farm on the terms which she offered. The court, evidently referring to a copy of the directions, said:

"I think the proper rule on that subject is for the court to determine, in the first place, whether there was a writing. Now, the testimony is clear that that paper which Mr. Cobb holds in his hand is a memorial of this transaction. You cannot prove your performance of the contract. There is ample evidence to go to this jury that you did make such a contract. On the question of having made the contract with Mrs. Kenady, you are short of evidence to show performance. In order to perform your part of the contract, you must produce to Mrs. Kenady a purchaser ready, able, and willing to buy. You produced the Cobbs, who are described in this writing. The writing shows Mr. Cobb's attitude to the transaction. He was a probable and prospective purchaser. He is not described in this writing to be a purchaser ready, able, and willing to buy on the terms offered. I am trying to show you you are short in your testimony."

Plaintiff's counsel, replying to the suggestions made by the court, with respect to the writing said:

"I think we prefer not to introduce that in evidence. We allege here we produced a purchaser, and she refused to sell."

2. An opportunity was offered to bring to this court the written directions referred to, from an inspection of which it might have been determined whether or not the

instructions to the bank were a part of the contract relating to furnishing a buyer of the land, who was ready, able, and willing to take it at the terms offered by the defendant. Instead of taking advantage of the court's suggestion, the advice was declined. An error of the trial court must be made affirmatively to appear before it can be corrected on appeal.

The alleged error is not apparent from an inspection of the bill of exceptions, and for that reason the judgment is affirmed.                                    AFFIRMED.

MR. JUSTICE BURNETT took no part at the hearing or in the consideration of the cause in this court.